Albert ARBOGAST, Arthur Carr, Granville Carr, George Currence, Harold Fisher, Michael Gear, Raymond Hamrick, Robert Isner, Gary Kisner, Joseph Kisner, Stanley Lambert, Russell Mason, Jr., Artie McDonald, David Moyer, Theodore Newlon, Jack Painter, Dorman Phillips, Richard Pyles, D.E. Rowan, Dempsey Jack Roy, Gary Roy, Jack D. Roy, Jr., John Sanders, Ronald Schoonover, Hobert Shoemaker, Timothy Shomo, Carl Simmons, Warren Smith, Chris Thompson, Linda Weese, Robert Wetzel, Douglas White, Lee Roy Whitmire, Woodrow Woods, Plaintiffs,

v.

CSX CORPORATION, a corporation, and CSX Minerals, Inc., a corporation, Defendants.

Civ. A. No. 86-0059-E(K).

United States District Court, N.D. West Virginia, Elkins Division.

March 9, 1987.

Jacques R. Williams, Hamstead & Hamstead, L.C., Morgantown, W.Va., for plaintiffs.

Barbara Lee Ayres and Andrew S. Zettle, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W.Va., for defendants.

ORDER

KIDD, District Judge.

Presently before the Court is plaintiffs' motion to remand with supporting memorandum. Defendants have filed their brief in opposition and affidavit and plaintiffs have filed their reply brief.

This action was originally commenced on March 25, 1986, in the Circuit Court of Randolph County, West Virginia. Plaintiffs are all former employees of the defendant CSX Corporation's subsidiary, Western Maryland Railway and are all alleged to be class members and citizens and residents of the State of West Virginia. Defendants are both incorporated in the State of Virginia and have their principal place of business in Virginia. Western Maryland Railway Company and the Baltimore and Ohio Railroad Company are also non-residents of West Virginia. Plaintiffs do not contest diversity as to citizenship.

Plaintiffs allege that they are all separated from their employment by way of dismissal, resignation, or lay-off within a period of five years. Count I of the complaint alleges that none of the plaintiffs timely

received full payment of unspecified wages earned prior to their separation as required by West Virginia law and are therefore entitled to the liquidated damages provided by *West Virginia Code*, § 21–5–4(e). Plaintiffs demand judgment against CSX as parent of Western Maryland Railway in the sum of $7,000.00 each. Count II avers that there exist "several hundred" former employees of CSX and its subsidiary railways, including 75 from the Elkins, West Virginia terminal, who are also similarly situated, "sharing a common claim" and as such, are members of a class seeking the same statutory liquidated damages in the amount of $7,000.00 for each individual class member. Count III incorporates Count I and Count II and seeks judgment against CSX alone.

From a review of the record before the Court, all of the individually named plaintiffs were employees of Western Maryland Railway Company in 1981 or 1982 as carmen or carmen helpers and were represented for the purposes of collective bargaining and the determination of rates of pay, rules, and working conditions by the Brotherhood Railway Carmen of the United States and Canada (hereinafter "BRC").

In 1964, BRC and Western Maryland Railway Company negotiated a protective agreement, a vacation agreement, and a base collective bargaining agreement governing the conditions of plaintiffs' employment. The protective agreement and the vacation agreement were the result of national bargaining pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, applicable to numerous railroads throughout the country.

Rule 31 of the base collective bargaining agreement contains an exclusive and mandatory procedure for handling claims or grievances of employees represented by BRC, all pursuant to and in accordance with the requirements of the Railway Labor Act, 45 U.S.C. § 152, Sixth, § 153. This mandatory grievance procedure applies to and governs disputes involving the application and interpretation of the agreements concerning rates of pay, rules, or working conditions, including any claims by plaintiffs for wages or other benefits allegedly due plaintiffs upon their furlough or termination of employment.

Defendants removed this matter to this Court on the basis of two jurisdictional theories. Defendants, in their removal petition, set forth that the claims asserted in the complaint are governed by collective bargaining agreements, the Railway Labor Act, 45 U.S.C. § 151 *et seq.* and the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq.* and therefore that this Court has federal question jurisdiction under 28 U.S.C. § 1337. Additionally diversity of citizenship, with an amount in controversy exceeding the jurisdictional amount is alleged therein with the defendants arguing aggregation of claims.

The Court will first address the federal question argument as to whether federal law has preempted plaintiffs' claims.

■ In contrast to the National Labor Relations Act, 29 U.S.C. §§ 151–166 (1982), courts interpreting the Railway Labor Act have typically found much broader preemption than under the NLRA because of the different mechanisms established by the two acts. The NLRA sets out "unfair labor practices" to be adjudicated by the Board in administrative proceedings, leaving resolution of bargaining agreement disputes generally to arbitration. In contrast to the more limited scope of the NLRA, the RLA created mandatory arbitration "to provide for the prompt and orderly settlement of *all* disputes growing out of grievances, or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5) (emphasis added). The breadth of the RLA procedures suggest that all grievances involving organized employees are preempted, *Kent v. Fugere*, 438 F.Supp. 560, 565 (D.Conn.1977) and the Supreme Court has implied as much. *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 323, 92 S.Ct. 1562, 1564–65, 32 L.Ed.2d 95 (1972). If a claim is founded on some incident of the employment relationship, it is immaterial, for purposes of coverage by the RLA, whether the claim is expressly covered by the collective bargain-

ing agreement, or is independent of that agreement. *Majors v. U.S. Air., Inc.*, 525 F.Supp. 853 (D. Maryland, 1981); *Elgin J. & E. Ry. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945). Unlike cases under the NLRA, the courts in RLA cases do not appear to go through a process of balancing state and federal interests. The cases, instead, rely upon strict statutory construction of the RLA's broadly-worded compulsory arbitration language. The United States Supreme Court in *Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R.*, 353 U.S. 30, 31–32 fn. 2, 77 S.Ct. 635, 636, fn. 2, 1 L.Ed.2d 622 (1957) stated:

> The relationship of labor and management in the railroad industry has developed on a pattern different from other industries. The fundamental premises and principles of the Railway Labor Act are not the same as those which form the basis of the National Labor Relations Act ...

More recent cases have not departed from the strict application of the compulsory arbitration requirement of the RLA. In *Schroeder v. Trans World Airlines*, 702 F.2d 189 (9th Cir.1983), the Ninth Circuit upheld a dismissal of a state complaint filed by pilots for unfair competition under a state statute, finding that the complaint was "in the nature of ... a grievance or complaint between an employee and his employer" and that "jurisdiction in the state court cannot be acquired even though the complaint as written demonstrates a cognizable state law claim."

 Under the RLA, 45 U.S.C. § 153 First (i)(1972), workplace grievances referred to as "minor disputes" are grievances dealing with individual workplace rights concerning labor contract, rates of pay, rules or working conditions and other incidents of the employment relationship. In *Elgin, J. & E. R. Co. v. Burley, supra*, the United States Supreme Court elaborated on the definition of "minor disputes" and said such grievances "affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or arise incidentally in the course of an employment. They represent specific maladjustments of a detailed or individual quality. They seldom produce strikes, although in aggravated instances they may do so." *Elgin, supra*, 325 U.S. at p. 724, 65 S.Ct. at p. 1290.

Here, the basis of the plaintiffs' claim fits this definition of "minor dispute" as contemplated by the Supreme Court in *Elgin, supra*, and the RLA procedures. Further, it is clear from a review of plaintiffs' complaint, that the plaintiffs intended to avoid application of federal law and relied solely on state law to articulate their claims. However, the nature of the complaint herein is a grievance or dispute between an employee and his employer and artful pleading will not be allowed, under these circumstances, to conceal the true nature of the complaint. *See Schroeder v. Trans World Airlines, supra*. Here the application of the RLA and the necessity of its interpretation establish the existence of a federal question as an essential element of plaintiffs' cause of action, providing the basis for removal in much the same way as the facts before the Court in the *Schroeder* case.

The facts before the Court here are clearly distinguishable and are much different than those in *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272 (4th Cir.1985). There, the matter involved and centered around a wage payment dispute under the South Carolina Wage Act in a National Labor Relations Act context as opposed to the present matter involving the RLA and its differences as discussed above. Here, the wage dispute claim for late payment of vacation pay is, as above discussed, a "minor dispute" inextricably intertwined with the parties' agreement and the Railway Labor Act. Here, as opposed to the situation in *Cook*, plaintiff's complaint, although cast entirely in state law, is premised on the employee-employer relationship and therefore implicates the labor contract and the breadth of RLA procedure. Here, a different conclusion may have been drawn if the matters only touched upon the NLRA. However, from a review of the Railway Labor Act and the decisions thereon cited above, it is the opinion of the Court

that Congress intended federal law to completely occupy and preempt this specific area of law in terms of railway employee disputes as that before the Court.

Therefore, based upon the above authority, it is the opinion of the Court that the dispute herein is subject to the exclusive and compulsory procedures of the Railway Labor Act and are therefore preempted by federal law.

It is therefore ORDERED that plaintiffs' action be dismissed and retired from the docket of this Court.

The Clerk is directed to transmit certified copies of this Order to counsel of record herein.