**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, and Edward K. Quick**

v.

**JETSTREAM INTERNATIONAL AIRLINES, INC., etc.**

Civ. No. B–88–2463.

United States District Court, D. Maryland.

June 26, 1989.

Jerry Anker and Elizabeth A. Ginsburg, Washington, D.C., and Bernard Rubenstein, Lutherville, Md., for plaintiffs.

Pamela J. White, Baltimore, Md., and E. Scott Smith, Atlanta, Ga., for defendant.

WALTER E. BLACK, Jr., District Judge.

Plaintiffs Air Line Pilots Association, International ("ALPA") and Captain Edward K. Quick filed their complaint for injunctive and monetary relief against defendant Jetstream International Airlines, Inc. ("Jetstream"), alleging that Jetstream violated the Railway Labor Act, 45 U.S.C. §§ 184 and 152, and breached its contract with Quick.

In early 1987, ALPA, a labor organization which represents commercial airline pilots, began a campaign to organize the pilots employed by Jetstream. Quick, a pilot employed by Jetstream at the time, was an active and open supporter of ALPA's campaign. In April, 1988, after an election conducted by the National Mediation Board, ALPA was certified pursuant to the Railway Labor Act as the collective bargaining representative of the Jetstream pilots. After this election, Quick was designated as the interim Chairman of ALPA's local council at Dayton, Ohio. Subsequently, he was elected Chairman of the local council. Since ALPA's certification as collective bargaining representative, the parties have been unable to complete negotiations for their first collective bargaining agreement.

On June 29, 1988, Jetstream terminated Quick's employment. Plaintiffs contend that Quick was harassed and discharged because of his union activity. Jetstream alleges that he was discharged because he reported late for duty and used foul language. In July, 1988, ALPA sent a letter to Jetstream which, it alleges, constituted a "grievance" on behalf of Quick. ALPA requested that Jetstream agree to establish a System Board of Adjustment to hear and decide Quick's discharge grievance. Jetstream refused to establish a System Board of Adjustment to hear the grievance. Plaintiffs allege that this refusal violated § 204 of the Railway Labor Act, 45 U.S.C. § 184.

■ Pending before the Court are cross motions for partial summary judgment filed by plaintiffs and defendant. These motions present the purely legal issue of whether the parties are obligated under 45 U.S.C. § 184 to establish a system board of adjustment where they have not yet entered into a collective bargaining agreement. No reported decision has directly addressed this issue.[1] After reviewing the statute, its legislative history, and related case law, this Court has determined that 45 U.S.C. § 184 creates no duty to establish a board of adjustment before the parties have entered into their first collective bargaining agreement.

■ Congress enacted the Railway Labor Act ("RLA") in 1926 in an effort to promote stable labor-management relations in the railroad industry. *Air Line Pilots Association, Int'l v. Eastern Air Lines,* 701 F.Supp. 865, 872 (D.D.C.1988). The RLA was extended in 1936 to cover the emerging air transportation industry. *International Association of Machinists v. Central Airlines, Inc.,* 372 U.S. 682, 685,

---

1. The parties have brought to the Court's attention two unreported decisions addressing this issue: *International Ass'n of Machinists v. Philippine Airlines, Inc.,* No. C 76 888 WTS (N.D. Cal., May 27, 1976 and February 16, 1977) and *Hillis v. Royale Airlines, Inc.,* No. 84–2332 (W.D. La., March 18, 1985). In *Philippine Airlines,* the Court directed the parties to establish a pre-contract system board to hear a dispute involving the discharge of two union activists. In *Royale Airlines,* on the other hand, the Court held that the statute established no duty to create a system board of adjustment in the absence of a collective bargaining agreement. For reasons discussed more fully elsewhere, this Court finds *Royale Airlines* to be the more persuasive opinion.

83 S.Ct. 956, 958, 10 L.Ed.2d 67 (1963). All of the original provisions of the RLA were to apply to the air carriers, except § 3, 45 U.S.C. § 153, which established the National Railroad Adjustment Board. 45 U.S.C. § 181. Instead, Congress postponed the establishment of a National Air Transport Adjustment Board until such time as the National Mediation Board deemed it necessary to create a permanent national adjustment board. 45 U.S.C. § 185. Unless and until a national board is created, the parties are required to establish system, group, or regional boards of adjustment. Central Airlines, 372 U.S. at 686, 83 S.Ct. 959. 45 U.S.C. §§ 153, 184–185. These adjustment boards are to be composed of members selected by the air carriers and by the employees' representatives. Baylis v. Marriott Corp., 843 F.2d 658, 662 (2d Cir. 1988). The adjustment boards have jurisdiction over "minor" disputes, which are disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions...." 45 U.S.C. § 184; Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945) (on rehearing 327 U.S. 661 (1946)). The decisions of these boards are final and are binding upon all parties involved in the dispute. 45 U.S.C. § 153. The arbitration procedures dictated by the RLA are mandatory, intended by Congress to keep these "minor" disputes out of the court system. Baylis, 843 F.2d at 662.

The RLA does not indicate when the duty to establish a system board of adjustment is triggered. The statute provides that "[i]t shall be the duty of every carrier and of its employees, acting through their representatives ... to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title." 45 U.S.C. § 184. Pursuant to section 153, the jurisdiction of any such board "shall be defined in the agreement establishing it." Thus, the parties have the opportunity to bargain over the jurisdiction of the board, although the jurisdiction must be broad enough reasonably to effectuate the purposes of the RLA. Air Line Pilots Association, Int'l v. Delta Air Lines, Inc., 863 F.2d 87, 91 n. 2 (D.C.Cir.1988) (opportunity to bargain); Hearings before the Committee on Interstate Commerce, Senate: Railway Labor Act, 69th Cong., 1st Sess. on S.2306, reprinted in American Landmark Legislation: The Railway Labor Act of 1926 at 100–101 (jurisdiction must be reasonable). Requiring Jetstream to establish a system board to hear Quick's grievance may deprive the parties of their opportunity to bargain over certain aspects of their system board's jurisdiction. See Delta Air Lines, 863 F.2d at 91 n. 2. In any event, the most logical forum and time for this bargaining is during the collective bargaining process. Thus, typically, the machinery for boards of adjustment is generally contained within collective bargaining agreements or side agreements accompanying the collective bargaining agreement. See, e.g., id. at 89; Barnett v. United Air Lines, Inc., 738 F.2d 358, 361 (10th Cir.), cert. denied, 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984); Reed v. National Airlines, Inc., 524 F.2d 456, 458 (5th Cir. 1975).

Judicial opinions discussing which disputes are "minor" disputes within the jurisdiction of a system board shed some light on the issue of whether a collective bargaining agreement is a prerequisite to the duty to create a system board.[2] The major-

---

**2.** Judicial opinions discussing whether disputes that are usually considered "minor" disputes should be submitted to a system board after the expiration of a collective bargaining agreement might have been helpful in this regard. However, there appears to be a circuit split on this issue. In Flight Engineers International Association v. Eastern Air Lines, Inc., 359 F.2d 303, 309 (2d Cir.1966), the Second Circuit held that once the collective bargaining agreement expired, the parties were no longer under any obligation to maintain the system board to hear grievance disputes. Cf. International Ass'n of Machinists & Aerospace Workers v. Aloha Airlines, Inc., 776 F.2d 812 (9th Cir.1985); Air Cargo Inc. v. Local Union 851, International Brotherhood of Teamsters, 733 F.2d 241, 245 (2d Cir.1984). In Air Line Pilots Association v. Eastern Air Lines, Inc.,

**206**

ity of the judicial opinions reviewed by this Court imply or state that a "minor" dispute contemplates an existing collective bargaining agreement. Thus, the Supreme Court has stated that the RLA places the parties "under the statutory duty of establishing and utilizing system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes arising under *existing* contracts." *Central Airlines,* 372 U.S. at 686, 83 S.Ct. at 959 (emphasis added). *See also Consolidated Rail Corp. v. Railway Labor Executives' Association,* — U.S. —, —, 109 S.Ct. 2477, 2479, 105 L.Ed.2d 250 (1989); *Brotherhood of Railway Trainmen v. Chicago River and Indiana Railroad Co.,* 353 U.S. 30, 33, 77 S.Ct. 635, 636, 1 L.Ed.2d 622 (1957) (minor disputes are "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation"); *International Association of Machinists v. Eastern Air Lines,* 847 F.2d 1014, 1017 (2d Cir.1988); *Association of Flight Attendants v. Republic Airlines, Inc.,* 797 F.2d 352, 357 n. 2 (7th Cir.1986); *Barnett,* 738 F.2d at 361; *Brotherhood Railway Carmen of the United States and Canada v. Norfolk and Western Railway Company,* 745 F.2d 370, 374 (6th Cir.1984); *Carbone v. Meserve,* 645 F.2d 96, 98 (1st Cir.), *cert. denied,* 454 U.S. 859, 102 S.Ct. 312, 70 L.Ed.2d 156 (1981); *Goclowski v. Penn Central Transportation Co.,* 571 F.2d 747, 754 n. 6 (3d Cir.1977); *but see Air Line Pilots Ass'n v. Eastern Air Lines,* 863 F.2d 891 (D.C.Cir.1988); *Arbogast v. CSX Corp.,* 655 F.Supp. 371, 372 (N.D.W.Va.), *aff'd,* 831 F.2d 290 (4th Cir.1987) (in federal preemption context). These cases evidence an understanding that the types of disputes which are generally submitted to system boards are those relating to the application or interpretation of collective bargaining agreements.

Plaintiffs assert, however, that the word "or" in the phrase "growing out of grievances, or out of the interpretation or application of agreements" implies that there are grievances not involving the application of collective bargaining agreements. Plaintiffs further contend that the duty of "every carrier and of its employees, acting through their representatives"[3] to establish a board to hear all grievances is triggered by the certification of a union, not by the parties' first collective bargaining agreement. Although it may be true that some types of disputes within the jurisdiction of a system board may not be covered specifically by the provisions of a collective bargaining agreement,[4] such an interpretation does not resolve the issue of whether an initial collective bargaining agreement is a prerequisite to the duty to establish a board of adjustment. Even those disputes that are not specifically covered by a collective bargaining agreement are generally viewed within the context of such an agreement underlying the employer-employee relationship. *See, e.g., Railway Labor Executives Association v. Norfolk and Western Railway Co.,* 833 F.2d 700 (7th Cir. 1987).

In deciding whether a dispute is a "minor" one to be submitted to a system board, courts ordinarily consider the past history of the relationship between the parties. The courts will consider "prior conduct 'which has attained the dignity of a relationship understood by the parties to at least impliedly serve as if part of the collective bargaining agreement....'" *Eastern Air Lines,* 863 F.2d at 897 (citing *United Transp. Union, Local Lodge No. 31 v. St. Paul Union Depot Co.,* 434 F.2d 220, 222–

863 F.2d 891, 898 (D.C.Cir.1988), *reh'g en banc denied,* 863 F.2d at 913 (1989) (with concurring and dissenting opinions), on the other hand, the Court held that disputes independent of the collective bargaining agreement, which clearly would be "minor" before the agreement expires, should also be considered "minor" after the agreement expires and therefore within the jurisdiction of a system board. Therefore, these cases provide little guidance to this Court with respect to the pending issue.

**3.** 45 U.S.C. § 184.

**4.** *See, e.g., Elgin,* 325 U.S. at 723, 65 S.Ct. at 1289; *but see Lancaster v. Norfolk and Western Railway Co.,* 773 F.2d 807, 814 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987).

23 (8th Cir.1970), *cert. denied,* 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971)); *see also, Consolidated Rail,* —— U.S. at ——, 109 S.Ct. at 2484. In adjudicating disputes within its jurisdiction, a system board also views past practices and working conditions in light of the relationship of the parties and their course of dealing. As a practical matter, no significant relationship between the parties exists until the union and the employer arrive at their first collective bargaining agreement. Otherwise, under the plaintiffs' reading of the statute, the parties would be required to create a system board when there is any relationship between an employer and a group of employees, whether or not a union has been certified. Congress could not have intended this result. Plaintiffs respond that "representatives" must mean a labor organization, and thus union certification triggers the duty to create a board; however, the definition of "representatives" contained in 45 U.S.C. § 151 includes "any person ... designated ... by ... employees, to act for ... them." *See Russell v. National Mediation Board,* 714 F.2d 1332, 1341 (5th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). Therefore, the word "representative" is not dispositive of when the duty to establish a board is triggered. Other than the point of union certification, the most logical triggering point and start of a significant relationship between the employees and their employers is the parties' first collective bargaining agreement. From this flows the rules, practices, and understandings to which a court or system board can look thereafter to adjudicate the grievances brought by the parties.

Thus, implicit in the statutory structure and judicial interpretations of the RLA is the recognition that an initial collective bargaining agreement is a prerequisite to the parties' duty to create a system board of adjustment.

This interpretation is supported by the legislative history of the RLA and the 1934 and 1936 amendments to the RLA. Proponents of the original 1926 bill apparently

believed that those grievances to be submitted for adjustment were disputes relating to the interpretation or application of existing contracts. *See* The Debate in the House of Representatives—69th Cong., 1st Sess., February 24–25, 1926, *reprinted in Statutory History of the United States: Labor Organization* at 80, 94–95; The Debate in the Senate—69th Cong., 1st Sess., May 6, 1926, *reprinted in Statutory History of the United States: Labor Organization* at 114; *but see, id.* at 111. The House Report on the 1934 amendments stated that minor disputes or grievances "develop from the interpretation and/or application of the contracts between the labor unions and the carriers...." H.R.Rep. No. 1944, 73d Cong., 2d Sess. 2 (1934). Further, the proponents of the 1934 and 1936 amendments at congressional hearings spoke primarily in terms of the adjustment board's role in applying and interpreting contracts. *See, e.g., Hearings on S.2496, to Amend the Railway Labor Act to Cover Every Common Carrier by Air Engaged in Interstate or Foreign Commerce, Before the United States Senate, Subcommittee of the Committee on Interstate Commerce,* 74th Cong., 1st Sess. 8 (1935) (statement of Edward G. Hamilton, representing the Air Line Pilots Association); *Railway Labor Act Amendments: Hearings on H.R. 7650 Before the House of Representatives Committee on Interstate & Foreign Commerce,* 73d Cong., 2d Sess. 80 (1934) (hereinafter "House Hearings") (statement of George M. Harrison, President of the Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees, Cincinnati, Ohio). Thus George Harrison, the "chief spokesman for the railway labor organizations," [5] stated that the disputes to be settled by the National Railroad Adjustment Board "arise out of the application of that agreement to the practical situation on the railroad.... The parties in the first instance have agreed on the contract; they have laid down rules." *Railway Labor Act Amendments: Hearings on S.3266 Before the Senate Committee on Inter-*

---

5. *Trainmen,* 353 U.S. at 38, 77 S.Ct. at 639.

*state Commerce,* 73d Cong., 2d Sess. 34 (1934). The compulsory arbitration provisions of the amendments to the RLA were attractive to their proponents for the very reason that contracts entered into between labor and management would be enforceable through the boards of adjustment, and this would lend some standing and stability to those contracts. *See Hearings on S.2496* at 8.

Many of the speakers at these hearings clearly assumed that an underlying collective bargaining agreement would be in place before disputes were submitted to an adjustment board. *See, e.g.,* House Hearings, *supra* at 129 (statement of M.W. Clement, Chairman of the Committee of the Railroads Delegated to Deal with the Proposed Amendments to the Railway Labor Act); *Id.* at 48 (statement of Honorable Joseph B. Eastman, Federal Coordinator of Transportation, Washington, D.C.) (stating that a national board of adjustment would make more uniform the interpretation of standard language in collective bargaining agreements). Most persuasively, the legislative history makes clear that the establishment of a National Air Transport Adjustment Board was delayed because there were no contracts in existence to interpret, and thus there were no disputes over which the Board could preside: "The reason for this permissive delay in [the National Air Transport Adjustment Board's] formation is that there is *nothing* for such a board to do until employment contracts have been completed, and there are no such contracts in operation now. In this way unnecessary expense is avoided until the need arises." H.R.Rep. No. 2243, 74th Cong., 2d Sess. 1 (1936) (emphasis added). Therefore, it is apparent that Congress did not contemplate the establishment of system boards prior to the creation of collective bargaining agreements between the parties.[6]

For all of these reasons, this Court concludes that the parties are not obligated to establish a system board of adjustment until Jetstream and ALPA enter into a collective bargaining agreement. Thus, this

---

6. This ruling, of course, does not preclude the parties from mutually agreeing that their system

Court has jurisdiction over Quick's complaint against his employer. Defendant's cross-motion for partial summary judgment as to Count 1 will be GRANTED and plaintiffs' motion for summary judgment as to Count 1 will be DENIED.

### ORDER

In accordance with the foregoing Opinion filed today in the above-captioned case, IT IS, this 26th day of June, 1989, by the United States District Court for the District of Maryland,

ORDERED:

(1) That Plaintiffs' Motion for Summary Judgment (Paper 12) as to count 1 of the complaint BE, and the same hereby IS, DENIED;

(2) That Defendant's Cross–Motion for Partial Summary Judgment (Paper 13) as to Count 1 of the plaintiff's complaint BE, and the same hereby IS, GRANTED.

---

board's jurisdiction will include grievances predating the collective bargaining agreement.