Joe W. **BAILEY**, et al., Plaintiffs,

v.

**NORFOLK & WESTERN RAILWAY COMPANY, a statutory corporation, Defendant.**

Civ. A. No. 1:93–0649.

United States District Court,
S.D. West Virginia,
Bluefield Division.

Jan. 24, 1994.

Lane O. Austin and William Flanigan, Sanders, Austin, Swope & Flanigan, Princeton, WV, for plaintiffs.

Jeffrey S. Berlin and Mark E. Martin, Richardson, Berlin & Morvillo, Washington, DC, Wade T. Watson, Sanders, Watson & White, Bluefield, WV, William P. Stallsmith, Jr., Norfolk, VA, for defendant.

### *OPINION*

FABER, District Judge.

This civil action was originally filed in the Circuit Court of McDowell County, West Virginia, by some fifty-two individual employees of the Norfolk & Western Railway Company ("N & W"), all of whom are over forty years of age. Plaintiffs contend that the N & W's rules, practices and procedures concerning seniority for conductors constitute a direct and purposeful violation of that portion of the West Virginia Human Rights Act which prohibits age discrimination. West Virginia Code, § 5–11–9.

The N & W, plaintiffs allege, devised and implemented rules relating to placement of brakemen on the conductor seniority list in such a way as to adversely impact the seniority rights of a class of workers, eighty percent of whom are over the age of forty, in favor of a class of workers whose membership is comprised of workers predominantly under the age of forty. The N & W's motivation, plaintiffs say, was to rid itself of costly benefit packages earned and vested by employees hired before November 1, 1985, in favor of younger workers whose benefit packages are less expensive for the railroad.[1]

The N & W removed this action to this court and promptly moved to dismiss, claiming that plaintiffs' claims of discrimination on the basis of age in violation of the West Virginia Human Rights Act are preempted by section 3 of the Railway Labor Act, 45 U.S.C. § 153, which commits the claims to resolution exclusively by means of arbitration before a Railroad Adjustment Board. The sole basis of federal jurisdiction claimed by the N & W is a federal question under 28 U.S.C. §§ 1441(a) and (b) because this case is said to arise under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, ("RLA"). In its removal petition, defendant points out that it is a carrier under the RLA and that plaintiffs are members of the United Transportation Union ("UTU"). The UTU is the collective bargaining representative for N & W employees and numerous crafts or classes of employees, including trainmen and conductors, under national collective bargaining agreements to which the N & W is a party. Plaintiffs' purported age discrimination claims, the N & W argues, are, in reality, "minor disputes" over interpretation and application of these collective bargaining agree-

---

1. The essence of plaintiffs' claim is captured by paragraphs 15 and 16 of their Complaint which read as follows:

> 15. The practical and disparate effect of the railroad's implementation of its policies and procedures is that a large class of older and age-protected workers, who had far greater trainmen seniority than workers hired after November 1, 1985, are placed on the bottom of the conductor list, at a time that their brakeman positions are being eliminated.
> 16. The plaintiffs herein charge that the actions, decisions, policies and practices of Norfolk and Western Railway Company with respect to placement of age-protected workers

on the conductor seniority list constitutes a direct and purposeful violation of *W.Va.Code* § 5–11–9, which provides:

> "It shall be an unlawful discriminatory practice ... for any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, condition or privileges of employment if the individual is able and competent to perform the services required ..."

As defined under *W.Va.Code* § 5–11–3(h) discriminate "means to exclude from or fail or refuse to extend to, a person equal opportunities because of ... age."

ments, and are subject to mandatory arbitration thereunder.

Plaintiffs have moved to remand to state court, contending that the Complaint relies exclusively on state law and state causes of action and, therefore, does not present a federal question entitling defendant to remove. The rights of the plaintiffs at issue in this case, it is argued, are grounded on West Virginia law, not in a collective bargaining agreement with defendant and, at any rate, are not such as could be bargained away by plaintiffs' union representatives.

■ It is a familiar proposition that a plaintiff is "master of his own action" and, as such, is free to choose the legal theory upon which his case will proceed. *The Fair v. Kohler Dye & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Normally, the plaintiff's selection of a theory will control for the purpose of determining whether federal question jurisdiction exists. For, under the "well-pleaded complaint" rule of *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), an action does not arise under federal law unless an assertion based thereon is an essential part of the plaintiff's complaint. *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

■ Claims of federal preemption typically arise as defenses to actions based on state law; since the defense does not appear on the face of the complaint, it normally does not authorize removal. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). A narrow exception to the well-pleaded complaint rule of the *Mottley* and *Gully* cases has been carved out by the United States Supreme Court. This exception, referred to as the "complete preemption doctrine," stems from *Avco Corp. v. Aero Lodge No. 735, IAM*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126, *reh'g denied*, 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 670 (1968). *Avco* was an action by an employer to enjoin a union from breaking a no strike clause contained in a collective bargaining agreement. Apparently in order to avoid a provision of the Norris–LaGuardia Act forbidding federal courts to issue injunctions in labor disputes, the plaintiff had sued

in state court and pleaded his claim as a breach of contract under Tennessee law. The respondents removed the case to federal court arguing that it presented a federal question because the action was, in reality, one arising under section 301 of the Labor Management Relations Act ("LMRA"). The Supreme Court agreed, relying upon *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), for the proposition that the LMRA "absorbed state law" which would no longer be "an independent source of private rights." *Avco*, 390 U.S. at 560, 88 S.Ct. at 1237.

The scope of this "complete preemption doctrine" has been narrowly circumscribed in Supreme Court cases subsequent to *Avco*. The first of these cases was *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The plaintiff in *Franchise Tax* was a California state agency charged with collecting unpaid state income taxes. The defendant trust was established under a labor agreement for the purpose of administering provisions of the agreement granting construction workers a yearly paid vacation. The plaintiff levied against funds held by the defendant in order to collect delinquent taxes owed by members of the construction workers' union. The complaint stated two causes of action, the first based upon a California statute authorizing plaintiff to levy against funds in the hands of third parties for collection of delinquent taxes, and the second under the California Declaratory Judgments Act seeking a ruling that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, did not preempt the provisions of state law allowing plaintiff to collect delinquent taxes. Defendant removed the action to federal court on the basis of a federal question, relying on the "complete preemption doctrine" of *Avco*. The Supreme Court declined to reach the merits of the preemption issue and held there was no federal question jurisdiction. After reviewing the history of the "well-pleaded complaint rule," the court indicated that if state law creates the cause of action, original federal jurisdiction is absent "unless it appears that some substantial, disputed question of feder-

al law is a necessary element of the well-pleaded state claims" or that the claim is really one of federal law. *Id.* at 13, 103 S.Ct. at 2848.

■ The difficulty of separating the jurisdictional question from the merits of the preemption issue is apparent in many of these cases. However, it seems obvious that the court's inquiry upon a motion to remand should turn on the question of congressional intent to create removal jurisdiction and not on congressional intent to preempt state law. For, if there is no jurisdiction, the court would be powerless to decide the merits of the preemption issue. The preemption issue should accordingly be left for resolution after the court decides whether it has jurisdiction. If the federal court determines it has jurisdiction, it proceeds to resolution of the preemption issue on its merits; if it decides it lacks jurisdiction, it properly leaves the merits of the preemption issue to the state court to decide, returning the case to that court. Therefore, following the procedure adopted by the Supreme Court in *Franchise Tax,* this court's inquiry will concentrate on the narrow issue of whether or not it has jurisdiction.

■ Subsequent to the *Franchise Tax* case, the Supreme Court, in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), dealt with a question it had left open in *Franchise Tax.* It reviewed the legislative history of ERISA and found there a congressional intent for the civil enforcement provisions contained in section 502 of ERISA to preempt state law to the same extent as section 301 of the LMRA. The narrow scope of the court's ruling is made abundantly clear by the following passage from Justice Brennan's concurring opinion:

> [O]ur decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, 'Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court* '.... In future cases involving other statutes, the prudent

course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to the state court.

*Metropolitan Life,* 481 U.S. at 67–68, 107 S.Ct. at 1548 (emphasis supplied).

Two weeks after the *Metropolitan Life* decision was announced, Justice Brennan delivered the opinion of a unanimous court in *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In that case, the plaintiff's complaint was based upon alleged breaches of individual employment contracts with the defendant. The defendant employer removed the case to federal court claiming that the individual contracts in question were superseded by a subsequent collective bargaining agreement and, therefore, preempted by section 301 of the LMRA. The Supreme Court rejected defendant's contention noting that, while the plaintiffs possessed substantial rights under the collective bargaining agreement and could have brought suit under the LMRA, they chose not to do so. The court's opinion concluded with this paragraph:

> It is true that when a defense to a state claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a section 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes their right created by a collective bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant

could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

*Id.* at 398–99, 107 S.Ct. at 2433 (emphasis supplied).

Consistent with *Franchise Tax*, the court in *Caterpillar* stated that it intimated no view on the merits of any of the preemption arguments, indicating that such questions must be addressed in the first instance by the state court in which the claim was originally filed.

The courts of appeals, following the Supreme Court cases discussed above, are, likewise, reluctant to base federal question jurisdiction on preemption defenses contained in defendants' pleadings. For example, in *Smolarek v. Chrysler Corp.*, 879 F.2d 1326 (6th Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989), an employee filed a suit against his employer in state court for discrimination under the Michigan Handicappers' Civil Rights Act. The employer removed the case, maintaining that federal labor law preempted the plaintiff's claims. The Court of Appeals for the Sixth Circuit held that the case should have been remanded to state court, holding that even though the employer was likely to assert as a defense that it based its actions on provisions of a collective bargaining agreement regarding reinstatement and accommodation, plaintiff's state claim for discrimination was not preempted by the LMRA.

Similarly, in *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157 (5th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990), a longshoreman initiated a wrongful death action in state court which was removed to federal court, the defendant claiming that the Federal Longshore and Harbor Workers Compensation Act created the plaintiff's exclusive remedy. The court held that the action was improperly removed, reasoning that under the well-pleaded complaint rule, the complaint as stated presented no issue of federal law. In *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283 (9th Cir.1989), the court held that California's age discrimination statute created a mandatory and independent state right even though federal labor law applied and arguably created alternate remedies.

The United States Court of Appeals for the Fourth Circuit reached a similar conclusion in *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272 (4th Cir.1985). In that case, employees brought a state action against their employer for unpaid wages and penalties and the employer removed the case to federal court arguing that a collective bargaining agreement governed by federal law brought the case within federal question jurisdiction. The Court of Appeals held that the case should have been remanded by the district court. Relying upon the well-pleaded complaint rule, the court noted that the plaintiffs did not allege any issue relating to the collective bargaining agreement in their complaint, nor would they be required to prevail on any such issue in order to establish their right to recover. The federal issue was interjected into the case only by defendant's counterclaim and, therefore, could not provide a basis for jurisdiction under the well-pleaded complaint rule.

Subsequent decisions by the Fourth Circuit Court of Appeals which allow removal based on the complete preemption doctrine are not inconsistent with *Georgetown Steel*. *Rayner v. Smirl*, 873 F.2d 60 (4th Cir.1989), was an action by a railroad employee against the railroad for wrongful discharge in which he alleged that he had been fired in retaliation for reporting railroad safety violations. The court held that the complete preemption doctrine applied because the Federal Railroad Safety Act of 1970 contained a specific "whistle blower" provision that exactly occupied the same ground as the plaintiff's state cause of action. Thus, there was in *Rayner* a clear expression of congressional intent to create exclusive federal jurisdiction over plaintiff's cause of action.

In *Lorenz v. CSX Transportation, Inc.*, 980 F.2d 263 (4th Cir.1992), an employee brought a state law defamation action against his employer arising from the employer's accusations of insubordination and unauthorized removal or theft of the employer's property from a boxcar. The Court of Appeals held that the employee's state law defa-

mation claim was a minor dispute preempted by the Railway Labor Act. *Lorenz* is significantly different from the case at bar because diversity of citizenship provided an independent basis for federal jurisdiction which is lacking in the present case. Accordingly, the court's inquiry in *Lorenz* was not focused on the issue of whether federal question jurisdiction existed since there was an independent basis of federal jurisdiction. The court, having jurisdiction on a ground other than federal question preemption, proceeded directly to the merits of the preemption issue and held that the state claim was preempted. As discussed above, a case such as the one at bar in which the sole basis of jurisdiction is a federal question based upon a preemption defense, must be analyzed upon the more narrow question of jurisdiction, leaving the merits of the preemption issue to resolution by the state court if federal question jurisdiction is determined to be lacking.

Similarly, *O'Brien v. Consolidated Rail Corp.*, 972 F.2d 1 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993), holding plaintiff's physical handicap discrimination claims under Massachusetts law to be preempted by the Railway Labor Act, was an action removed on the basis of diversity jurisdiction. The court, like the Fourth Circuit in *Lorenz*, had jurisdiction independently of the preemption-based federal question and was compelled to consider the preemption issue on its merits.

*Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), like the Fourth Circuit case of *Rayner*, illustrates the narrow confines of the complete preemption exception to the well-pleaded complaint rule. There, plaintiff sued in a Georgia court for damages against his employer, alleging that he had been wrongfully discharged after an accident. The Supreme Court noted that at common law a contract of employment is terminable at will and that the only reason this rule did not apply to plaintiff was his union's collective bargaining agreement with the defendant.

Under such circumstances, the Court held, the collective bargaining agreement was the sole source of the right sued upon and the grievance procedure under the Railway Labor Act was plaintiff's only available remedy.

Similar to *Andrews v. Louisville & Nashville R.R.*, is the Fourth Circuit's unpublished opinion in *Arbogast v. CSX Corporation*, 655 F.Supp. 371 (N.D.W.Va.), *aff'd*, 831 F.2d 290 (1987) (unpublished per curiam) upon which the defendant relies.[2] In *Arbogast*, employees of the defendant railroad brought suit in state court for nonpayment of wages under the West Virginia Wage Payment and Collection Act, West Virginia Code, § 21–5–1, *et seq.* The district court denied a motion to remand and held that plaintiffs' claims were preempted by the compulsory grievance procedures of the RLA. The Court of Appeals, upon reasoning identical to the Supreme Court in *Andrews*, affirmed, stating:

> Through their state law claims, plaintiffs sought to have the district court determine their disputed entitlement to wages under the governing collective bargaining agreement. The only source of their right to the pay that they allege was withheld is the collective bargaining agreement. Their pay was not authorized by West Virginia law; West Virginia only authorized the penalty that attached to nonpayment if their basic right was established.

*Arbogast*, No. 87–1581 at 2, 1987 WL 38662.

In contrast to *Arbogast*, the case at bar is an action in which the plaintiffs eschew any rights they may have under the relevant collective bargaining agreement and sue upon a right created by state statute—the right not to be discriminated against because of their ages. If plaintiffs' assertions in their Complaint are well-founded, this right exists separate and apart from any collective bargaining agreement between the defendant and plaintiffs' union.

2. Unpublished opinions are not binding precedent in the Fourth Circuit. Fourth Circuit Court of Appeals, I.O.P. 36.5 and 36.6. Under I.O.P. 36.6, citation of unpublished opinions is disfavored. The *Arbogast* case is discussed here only because it was cited and relied upon by defendant, the court believing that a response thereto is necessary in order to fully elucidate the reasons for its ruling.

224

There is nothing in the RLA to suggest that Congress has so completely preempted the field as to indicate an intent to confer federal question jurisdiction in a case such as the present. The basic purpose of the RLA is to foster and promote collective bargaining while providing for continuity of services to the public. To facilitate this goal it sets up a procedure for resolution of major and minor disputes which occur in the operation of railroads. *Norman v. Missouri Pacific R.R.,* 414 F.2d 73, 82–83 (8th Cir.1969). The RLA does not evince a congressional intent to bar states from protecting employees against racial discrimination. *Colorado Anti–Discrimination Commission v. Continental Airlines, Inc.,* 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84 (1962). Furthermore, Congress has unequivocally intended in the field of employment discrimination to permit overlapping and parallel state and federal remedies. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). *See also, Muncy v. Norfolk & Western R.R.,* 650 F.Supp. 641 (S.D.W.Va. 1986). Against this background it can hardly be said that Congress intended to so totally occupy the field in the present case as to confer federal question jurisdiction in accordance with the complete preemption doctrine of *Avco.* This conclusion is further supported by *Atchison, Topeka & Santa F. R.R. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), holding that suit by a railroad employee compensable under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.,* is not barred simply because the injury was caused by conduct subject to arbitration under the RLA. The Court indicated that the RLA is not the exclusive remedy for minor disputes under the RLA, holding, in effect, that Congress did not intend to confer federal question jurisdiction in such cases by completely preempting the field.

The court therefore concludes that the complete preemption exception to the well-pleaded complaint rule is inapplicable to this case and that this case was removed improvidently and without jurisdiction, the court lacking federal question jurisdiction under the well-pleaded complaint rule. The plaintiffs in the case at bar have elected to eschew any claim they may have based upon the collective bargaining agreement between their union and the defendant. They have placed all their eggs in the basket of the West Virginia Human Rights Act. Plaintiffs have made a conscious decision to risk all on the merits of their case as measured by that state law. As framed, plaintiffs' case does not depend upon any substantial, disputed question of federal law, nor can it fairly be said to be a claim under federal law masquerading as a state claim. Having elected to so restrict their claim, plaintiffs, under the well-pleaded complaint rule, have a right to have that claim proceed to resolution in the state court. This court, in deciding the narrow question of jurisdiction, must take the plaintiff's complaint as framed, apply the well-pleaded complaint rule, and invoke the complete preemption exception thereto only if the complaint as framed comes within the narrow confines of that exception. This case does not fit within such narrow bounds and, as a consequence, must be returned to the state court where it was originally filed.

■ This ruling goes only to the question of jurisdiction. This court has addressed the preemption issue only to the limited extent necessary to decide the jurisdictional question. Defendant is not precluded from raising the preemption issue anew in state court. Entrusting state courts with questions of federal law is nothing new in our federal system. The absence of original federal question jurisdiction does not mean that there is no federal forum in which the preemption defense may be heard; a state decision rejecting a preemption claim may ultimately be reviewed by the United States Supreme Court. *Franchise Tax,* 463 U.S. at 12 n. 12, 103 S.Ct. at 2848 n. 12.

An appropriate Order will be entered remanding this case to the Circuit Court of McDowell County, West Virginia.