**James E. RAYBOURN, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.**

No. 84–0624–CV–W–6.

United States District Court, W.D. Missouri, W.D.

Feb. 15, 1985.

Patrick Beeman, William Harrison Norton, Norton, Pollard & Norton, Inc., Kansas City, Mo., for plaintiff.

Edward W. Mullen, Deacy & Deacy, Kansas City, Mo., for defendant.

MEMORANDUM AND ORDER

SACHS, District Judge.

Pending before the court is defendant's motion for summary judgment. This action arose from a set of events that occurred on October 19, 1983. Plaintiff was an employee of defendant railroad since January 8, 1945. Defendant's Ex. G at 38. On October 19, 1983, plaintiff was working as a field man, *id.* when he was discovered by two of defendant's representatives, D.L. Banning and K.D. Dunn. *Id.* at 5, 11. Banning and Dunn found plaintiff in a ca-

---

boose sleeping. *Id.* at 5, 11. When awoken, plaintiff's eyes were observed to be bloodshot, he staggered, and his speech was slurred. *Id.* at 6, 12, 13. Banning and Dunn thought plaintiff was drunk. *Id.* at 6, 13.

Plaintiff denied drinking on October 19, 1983, although he admitted to having drunk a half pint of Wild Turkey at 11:45 p.m. on October 18, 1983. *Id.* at 39–40. No liquor was found on plaintiff, in his personal bag, or in any likely places. *Id.* at 15. Furthermore, plaintiff claimed to have had permission to be lying down. *Id.* at 22. Plaintiff explains the weakness in his walking as a result of lying awake all night and crying. *Id.* at 40. This also might explain plaintiff's bloodshot eyes.

Plaintiff was taken to North Kansas City Hospital for a blood alcohol test. *Id.* 5, 12. Apparently plaintiff initially agreed to the test, but when Banning, Dunn and he arrived at the hospital, he refused to take the test without the presence of his family doctor. *Id.* at 5, 9, 16. Banning and Dunn further testified that plaintiff also wished to speak with his lawyer. *Id.* 5, 13. Banning, Dunn, and plaintiff evidently argued about plaintiff's requests for about thirty minutes in a heated fashion. *Id.* at 5. Plaintiff testified that he did not trust the qualifications of the hospital employees who were to give him the blood alcohol test. *Id.* at 46–47. Finally, Banning offered to make other arrangements for plaintiff to either return home or go back to the business premises. *Id.* at 16–17. Apparently, it was defendant's policy when an employee was under the influence of alcohol to either call someone to come and get the employee at his request or call the North Kansas City, Missouri, police and tell them that the employee was under the influence of alcohol and would possibly be driving home. *Id.* at 16.

From the time he arrived at the hospital, plaintiff had stated that he wished to go upstairs and visit his wife who was a pa-

tient there. *Id.* at 17. Plaintiff's wife was in the hospital because of liver cancer. *Id.* at 64. Evidently, the prognosis was poor. *Id.* Her illness may have caused plaintiff to lie awake crying the night of October 18, 1983. *Id.*[1]

Subsequently, Banning called the police. *Id.* at 16–17. Plaintiff was arrested for disorderly conduct, *id.* at 17 and was in jail for five to six hours before he was released on bond. *Id.* at 49. The charges against him were subsequently dismissed without prejudice. *Id.* at 22.

Plaintiff's employment was terminated. He unsuccessfully pursued his appeal rights under the collective bargaining agreement. The termination was upheld by the highest officer designated by the company to hear such matters. Affidavit of J.W. Tolbert at 6–7 (signed Dec. 22, 1984). Tolbert states that plaintiff has until July of 1985 within which to file a grievance with the National Railroad Adjustment Board or to a public law board designated by the parties. *Id.* at 7.

On May 7, 1984, plaintiff filed suit in the Clay County Circuit Court complaining of false arrest and imprisonment by defendant's agents and their wrongful institution of his arrest and confinement by the North Kansas City, Missouri, Police Department. Defendant, an out-of-state corporation, removed the case to this court.

Defendant contends that the same facts and matters forming the factual background for the arrest and confinement complained of were the facts and matters determined in the investigation hearing on the contested discharge, held pursuant to the union contract, and from which plaintiff appealed pursuant to the provisions of the Railway Labor Act, 45 U.S.C. §§ 151 et seq. Therefore, defendant contends that plaintiff's claim is preempted by the Railway Labor Act and should be subject to mandatory arbitration as a minor dispute

---

1. His wife's condition may, of course, have contributed to causing excessive use of alcohol, as

defendant contends.

arising out of the collective bargaining agreement. *See* 45 U.S.C. § 153 First (i). The court disagrees.

Simply because plaintiff may have an arbitrable claim for wrongful discharge does not mean that plaintiff must pursue that remedy, and somehow seek relief in arbitration for the wrongs here alleged. There was no effort, in enacting the Railway Labor Act, to comprehensively regulate labor-management relations in that portion of the economy, or to divert from the courts every controversy between an employee and a railroad employer. The court of appeals for this circuit has rejected efforts to push all such controversies into the exclusive jurisdiction of administrative bodies, particularly where the administrative remedies appear to be inadequate. *Norman v. Missouri Pacific R. Co.*, 414 F.2d 73, 83 (8th Cir.1969). *See also Peters v. Missouri Pacific Railroad Co.*, 483 F.2d 490, 497 (5th Cir.), *cert. denied*, 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 238 (1973); *Stevens v. Braniff Airways, Inc.*, 490 F.Supp. 231, 233 (D.Minn.1980); *Bremer v. St. Louis Southwestern Railroad Co.*, 310 F.Supp. 1333, 1336–37 (E.D.Mo.1969).

■ This is not a case where plaintiff is simply trying to relabel claims arising from a discharge, as was attempted in *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). See *Viestenz v. Fleming Companies, Inc.*, 681 F.2d 699 (10th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 303, 74 L.Ed.2d 284 (1982); *Balzeit v. Southern Pacific Transportation Co.*, 569 F.Supp. 986, 990 (N.D. Cal.1983). Plaintiff claims to be the victim of a tort which is legally independent of any contractual claims or grievances he may have and that may be arbitrable.

■ Plaintiff's claim is also free of the preemption questions that arise when the questioned conduct is "arguably permitted" by national labor policy or an "arguably prohibited" unfair labor practice, under the more comprehensive provisions of the Labor Management Relations Act, 29 U.S.C. § 158. Even if that legislation were applicable,[2] it is unlikely this type of claim would be preempted. *Tumbarella v. Kroger Co.*, 85 Mich.App. 482, 271 N.W.2d 284 (1978). While the plaintiff's breach of contract claim may be factually related, and must be processed in another manner, it is sophistry to contend this typical tort claim is covered by, or precluded by, the Railway Labor Act.[3]

The court recognizes that *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Md.1981) reaches a result advocated by this defendant. In *Majors* the plaintiff sued his employer for false imprisonment and defamation as a result of his detention by his supervisors in an investigation of theft of company property. Judge Jones held that where plaintiff's claim for allegedly tortious conduct committed in the course of a company investigation was "founded on some incident of the employment relation, it [was] immaterial, for purposes of the Railway Labor Act, whether the claim [was] expressly covered by the bargaining agreement, or [was] independent of that agreement." 525 F.Supp. at 857. Judge Jones further held that

> [i]nvestigation of suspected thefts of company property is a normal incident of any employment relationship. This is especially so where, as here, theft is a grounds for discharge under the collec-

---

**2.** The preemption principles under the Railway Labor Act and the Labor Management Relations Act are related, but the comparison is probably restricted to the breach of contract section (29 U.S.C. § 185) of the latter Act. *See Viestenz*, 681 F.2d at 704 n. 4; *Balzeit*, 569 F.Supp. at 988 n. 5.

**3.** Many of the considerations set forth in the dissenting opinion of Justice Douglas in *An-*

*drews v. Louisville & Nashville R. Co.*, 406 U.S. 320, 326–336, 92 S.Ct. 1562, 1566–1571, 32 L.Ed.2d 95 (1972) are applicable here, although the court obviously accepts the view of the *Andrews* majority that wrongful discharge cases are within the exclusive jurisdiction of the Adjustment Board. *See generally*, Gorman, Labor Law at 768 (1976).

**388**

tive bargaining agreement. Therefore, although that agreement does not speak to the procedures that govern such investigations, the dispute at issue bears a not insubstantial relationship to the labor contract, and this Court's jurisdiction is preempted.

*Id.* (footnote omitted).

Under the Consolidated Code of Operating Rules, Defendant's Ex. O, Rule G

[t]he use of alcoholic beverages ... by employees subject to duty, or their possession or use while on duty or on Company property, is prohibited.

Employees must not report for duty under the influence of any alcoholic beverage ... that may in any way adversely affect their alertness, coordination, reaction, response or safety.

Thus, if the court were to accept Judge Jones' reasoning, plaintiff's claim would be preempted since investigation of a violation of company rules, i.e., being intoxicated while on duty, could have reasonably been expected. The court does not, however, take so restrictive a view of the law. Under Judge Jones' analysis, no matter how outrageous the conduct of an employer's investigation of possible misconduct by an employee was, a state cause of action would be preempted. For example, an employee whose home was broken into to search for evidence of a breach of company rules, e.g., theft of company property, would have no valid cause of action.

In the case at bar, the alleged false arrest imprisonment is an independent tort. Missouri has a substantial interest in protecting its citizens from false arrest and imprisonment, even when the claim is processed against an employer. There is little or no risk that the current action will interfere with the effective administration of the Railway Labor Act or with Congressional intent in enacting that legislation. Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is DENIED.