**Catherine T.M. McCANN, Plaintiff,**

v.

**ALASKA AIRLINES, INC., et al., Defendants.**

**No. C90–3168 TEH.**

United States District Court, N.D. California.

Jan. 24, 1991.

Stephen R. Jaffe, San Francisco, Cal., for plaintiff.

Charles A. Palmer, Randi Maurer, Perkins Coie, Los Angeles, Cal., for defendants.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter comes before the Court on the plaintiff's motion to remand this action to state court and for attorney fees, and on the defendant's motion to dismiss for lack of subject matter jurisdiction. The parties' motions came on for hearing on January 14, 1991 at 10:00 a.m., the Honorable Thelton E. Henderson presiding. Stephen R. Jaffe appeared for the plaintiff. Charles F. Palmer, Randi Maurer and Perkins Coie appeared for the defendants.

The central issue in deciding both of the major motions is whether the plaintiff's state law claims are preempted by the Railway Labor Act. After careful consideration of the parties' written and oral arguments, it appears to the satisfaction of the Court therefrom that the plaintiff's state law claims are not preempted by the Railway Labor Act, and that therefore, the plaintiff's motion to remand to state court should be GRANTED, and the defendant's motion to dismiss for lack of subject matter jurisdiction should be DENIED. However, we do not believe that the plaintiff has demonstrated that attorney fees are appropriate in this instance, and we therefore exercise our discretion to DENY the motion for attorney fees.

## BACKGROUND

At the time of the events here at issue, Catherine McCann was employed by the defendant, Alaska Airlines, Inc. ("Alaska"), as a customer service agent. McCann's employment is governed by a collective bargaining agreement (CBA) entered into by Alaska and her union. Alaska and its employees are covered by the Railway Labor Act (RLA). The following are the facts as alleged by the plaintiff.

Patrick Partridge, a security representative employed by Alaska, was assigned to investigate a report that $95 had been taken from a cash drawer at Alaska's Oakland facility. Toward the end of McCann's shift on August 1, 1990, her supervisor, Vern Organ, asked her to enter a private room on Alaska's premises. McCann there encountered Partridge for the first time. Partridge identified himself as a law enforcement officer and began to interrogate McCann. Partridge detained McCann for a total of over three hours, and for one hour beyond the end of her shift. Despite McCann's requests, Partridge refused to allow her to leave the room for this period, even to use the restroom.

Partridge told McCann that she was soon to be arrested for unspecified crimes and would be taken to Alameda County Jail and incarcerated. He told her that she had been under the surveillance of a video camera with a lens "the size of the tip of a ball point pen," and that he had a videotape showing McCann engaged in crimes and improper conduct. Partridge told McCann that she would lose her job regardless of her guilt or innocence. Partridge repeatedly left the room to telephone a high ranking Alaska executive named Ray Vecci concerning the matter, and for instructions on whether to detain McCann further. Many of Partridge's questions were of a personal nature, wholly unrelated to McCann's employment.

McCann denied any improprieties, and asked to see the videotape. Partridge said she would only see the videotape when it was shown to the jury. No videotape is now alleged to exist.

Upon McCann's return to work on August 6, 1990, her supervisor, Vern Organ, ordered her to leave the premises and not to return until she was treated by a psychiatrist. Much of this exchange was observed by McCann's co-workers.

To date, McCann remains employed by Alaska in the same position.

On October 22, 1990, McCann commenced this action in Alameda County Superior Court, naming Alaska, Partridge, and 20 Does as defendants, and alleging state law claims for: (1) false imprisonment; (2) intentional infliction of emotional distress; (3) assault; (4) slander; and (5) conspiracy.

On November 6, 1990, Alaska removed to federal court, claiming that the state law claims are preempted by the RLA.

## THE MOTIONS

The defendant now moves for dismissal of the action, on the ground that even if the above facts are true, the plaintiff's state law claims are preempted by the Railway Labor Act (RLA). The defendant argues that the RLA establishes an elaborate arbitration scheme which is to be the sole mechanism for the resolution of all employer-employee disputes, with a small number of narrowly-defined exceptions. In the alternative, the defendant argues that the matters raised by the plaintiff are at least "arguably" governed by the collective bargaining agreement. In either case, the defendant argues that the plaintiff's only recourse is to the RLA arbitration procedures, and that this Court is therefore without jurisdiction to hear the case, and must consequently grant the motion to dismiss.

The plaintiff has moved for remand on the ground that the state law claims are not preempted by the RLA, and that the action was therefore improperly removed. The plaintiff argues that the RLA preempts only those matters which are governed by the CBA, and that there is nothing in the CBA which even arguably governs the type of behavior here at issue. In the alternative, the plaintiff argues that even if the action involves conduct arguably governed by the RLA, the conduct at issue falls into the "outrageous conduct" exception to RLA preemption.

The plaintiff moves also for attorney fees in the case that we grant the motion for remand.

## LEGAL STANDARD

A motion to remand is granted pursuant to 28 U.S.C. § 1447(c) "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction ..."

■ The leading case in this jurisdiction on RLA preemption of state law claims is *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.1978). Under the *Magnuson* rule, a state law claim is preempted if it "is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L. A." Id. at 1369.[1] The Court is without jurisdiction over a preempted matter, and the plaintiff must resort to the RLA arbitration procedures.

■ The *Magnuson* court states that a dispute is "minor," and is therefore preempted if it is " 'arguably' governed by

---

1. The "inextricably intertwined" standard is quite similar to that used in cases involving § 301 of the Labor–Management Relations Act. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985) ("Our analysis must focus, then, on ... whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract."); *see also, Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

The parties argue over the relevancy if § 301 doctrine to RLA cases. In *Grote v. Trans World Airlines,* 905 F.2d 1307 (9th Cir.1990), *cert. den.*

—— U.S. ——, 111 S.Ct. 386, 112 L.Ed.2d 397, our Circuit held that "The preemption created under the RLA and that arising under § 301 of the LMRA are not analogous." Id. at 1309. However, in numerous RLA preemption cases, including *Grote* itself, the Ninth Circuit has looked for guidance to NLRA and § 301 cases. *See, e.g., Magnuson, supra; see also, Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 564–65, 107 S.Ct. 1410, 1414–15, 94 L.Ed.2d 563 (1987) (citing NLRA preemption cases). Nonetheless, our Circuit has held that RLA preemption is broader than § 301 preemption. *Grote* at 1310.

the collective bargaining agreement or has a 'not obviously insubstantial' relationship to the labor contract." Id. at 1369–70. This standard has been repeatedly followed in our Circuit. *See, DeTomaso v. Pan American World Airways, Inc.*, 43 Cal.3d 517, 527–529, 235 Cal.Rptr. 292, 298–99, 733 P.2d 614, 620–21 (1987) and cases cited. "Minor dispute" is a legal term of art which has no relation to the triviality of a disagreement. A dispute between an employee and an RLA employer is "minor" if it can be resolved solely on the basis of the collective bargaining agreement (CBA). *Consolidated Rail Corp. v. Railway Labor Execs' Ass'n*, 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). A minor dispute is always completely preempted, and is within the exclusive jurisdiction of the arbitration machinery established under the RLA. *Air Line Pilots Ass'n v. Eastern Air Lines*, 863 F.2d 891 (D.C.Cir. 1988).

■ An exception to RLA preemption which derives from NLRA preemption doctrine is recognized in this Circuit. The *Magnuson* court relied on the NLRA case of *Farmer v. United Broth. of C. & J. of America, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), to hold that an exception to federal preemption exists for "outrageous conduct," especially when the "conduct was a merely peripheral concern of federal law," and when the conduct affects "interests which were deeply rooted in local feelings and responsibility." *Magnuson* at 1369; *see also, Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 566, n. 13, 107 S.Ct. 1410, 1416, n. 13, 94 L.Ed.2d 563 (1987). This exception was applied by this court in *Balzeit v. Southern Pacific Transportation Co.*, 569 F.Supp. 986 (N.D.Cal.1983).

Section 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." *See, Kunzi v. Pan American World Airways, Inc.*, 833 F.2d 1291 (9th Cir.1987).

DISCUSSION

■ We find that the state claims are not preempted and therefore order the case

remanded back to state court on two independent grounds: (1) the resolution of the state law claims is not "inextricably intertwined" with the grievance machinery of the collective bargaining agreement (CBA); (2) the state claims are based upon "outrageous conduct" of "merely peripheral concern to federal law," and the conduct affects "interests which were deeply rooted in local feelings and responsibility."

*1. State law claims are not inextricably intertwined with the CBA.*

Federal law preemption of state law claims is a delicate matter, giving "rise to difficult problems of federal-state relations." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 239, 79 S.Ct. 773, 776, 3 L.Ed.2d 775 (1959). Preemption forecloses to the plaintiff remedies which the state legislature and courts have decided to make available to citizens of the state, and forces "state regulation [to] yield to subordinating federal authority ..." Id. at 241, 79 S.Ct. at 778. Federal courts take such extraordinary action only for the compelling purpose of safeguarding federal policies from potential interference or conflict with state action. The Supreme Court stated in the leading case involving the closely related issue of federal labor law preemption of state claims under the National Labor Relations Act (NLRA):

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959).

Justice Harlan's concurrence in the same case states that "conflict [between state

and federal law] is the touchstone of preemption ..." Id. at 250, 79 S.Ct. at 783.

In determining whether a state law claim is preempted by the RLA, we must ask whether the state claim interferes with the purposes of the Act. It is often noted that "A primary purpose of the Act is 'to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.' (45 U.S.C. § 151a(5).) Such disputes are known as 'minor disputes.'" *DeTomaso v. Pan American World Airways, Inc.*, 43 Cal.3d 517, 235 Cal.Rptr. 292, 733 P.2d 614 (1987) (citations omitted).

■ The RLA was designed to allow employers and employees governed by the Act to establish their own terms and conditions of employment, and to establish the arbitration mechanism to enforce those negotiated terms. Preemption is designed to keep the state legal apparatus clear of this bargaining process, in order to preclude interference with the federal scheme.

■ The Ninth Circuit standard articulated above effectively safeguards the federal interests at stake in RLA preemption cases, while not unnecessarily trammeling state law rights which do not interfere with the federal scheme. The test for preemption is variously formulated as: (1) whether the state law claim "is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A." *Magnuson*, 576 F.2d 1367, 1369 (9th Cir.1978); (2) whether the dispute is "'arguably' governed by the collective bargaining agreement;" (3) or whether the dispute has a "'not obviously insubstantial' relationship to the labor contract." Id. at 1369–70. The basic question in each inquiry is whether there is a nexus between the state law claims and the collective bargaining agreement, in which case there would be potential for state law interference with federal policy.

We find that under any of the articulations of the Ninth Circuit standard, McCann's claims are not preempted by the RLA. There are no provisions in McCann's CBA which even "arguably govern" the dispute here at issue, and the dispute therefore has an "obviously insubstantial relationship" with the CBA. Also, we find that the "matrix of facts" here involved are not "inextricably intertwined with the grievance machinery of the collective bargaining agreement or of the R.L.A." Id.

■ Alaska cites several CBA provisions which it claims govern its actions. However, those provisions do not even "arguably govern" this case. Of the provisions cited, the following are the only ones meriting consideration:

It is the intent of the parties of this Agreement that the procedures herein shall serve as a means of peaceful settlement for *all* disputes that may arise between them. CBA Art. III.

Reliance on this provision would preempt *all* employer-employee actions. This is clearly not the intended effect of RLA preemption. The Ninth Circuit standard clearly contemplates that certain actions will not be preempted—specifically, those which do not implicate the CBA. Also it is well-established that employees may bring actions for discrimination claims, *Colorado Anti-Discrimination Comm'n v. Continental Air Lines, Inc.*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) (state statute prohibiting race discrimination in air line hiring does not frustrate purposes of R.L.A.), and for FELA claims, *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), which would be preempted under a strict application of the defendants' proposed CBA reading.

The untenable nature of Alaska's position was revealed in oral argument when Alaska's attorney admitted that under his interpretation of governing law, even claims for employer torture of employees would be preempted by the RLA. Alaska's position was that even if detective Partridge had administered "thirty lashes" to Ms. McCann during the investigation, McCann would have been preempted from bringing any state tort claim for any per-

manent scars or injuries sustained from the abuse. Certainly it was not Congress' intent in enacting the RLA to allow employers free reign to inflict such abuse upon their employees.

RLA preemption does not swallow all matters which fall into its path. To say that all employee-employer actions are preempted by the RLA would be to say that the RLA employee effectively leaves her non-contractual rights at her employer's door. The defendant can direct us to no binding authority which compels such a result. For these reasons, Alaska's reliance on the above provision is of little moment.

■ Alaska also notes that the CBA prohibits theft, and argues that the CBA "template[s] that employees suspected of theft will be subject to an investigation." Reply Memorandum in Support of Def's Mtn to Dismiss, at 18. However, the provisions relied upon state only that an employee may be removed from Alaska's premises "until an investigation of a possible rule infraction can be completed." System Regs. § 2.120, and that "Before taking disciplinary action, a supervisor should complete an Investigation Report." Id.

These provisions and other provisions cited allow discipline and removal from the workplace, but discipline and removal are not at issue here. The activities at issue here were investigation and interrogation. The contract provisions do not purport to allow or to even govern the type of investigation which occurred to Ms. McCann. Nowhere does the CBA grant to Alaska the right to detain at length, falsely accuse, and interrogate its employees in the manner which allegedly occurred in this case.

The state tort claims raised by Ms. McCann in this case can be resolved wholly independently from the CBA, are not inextricably intertwined with the CBA, and are

not substantially related to the CBA. The state court would not find it necessary to interpret the CBA or the RLA since no contract provisions apply here. Thus, the action poses no threat to federal labor policy. We therefore find that the state law claims here at issue are not preempted by the RLA; were therefore improperly removed; and that the case should be remanded to the state court from which it was removed.

McCann correctly points out that almost all of the numerous cases cited by Alaska[2] are cases in which the employee challenged a "wrongful termination," and sometimes alleged emotional distress stemming from the termination. There is no question that "wrongful termination" is a matter squarely within the terms of any CBA, and is therefore a "minor dispute" within the sole jurisdiction of the labor arbitrator. Since McCann was not discharged, the holdings of these cases are not governing. McCann's alleged injuries do not flow from any behavior arguably governed by the CBA.

Additional cases cited by Alaska addressed other matters clearly governed by the CBA. For instance, *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189 (9th Cir.1983) involved an employee demotion, where the CBA expressly addressed demotion.

Alaska cites only two cases which are in any way similar to the one at bar. In *DeTomaso, supra,* an employee brought intentional infliction of emotional distress and defamation claims following an investigation after which he was incorrectly accused of theft. However, in *DeTomaso,* the employee was discharged, and the Court noted that the state law claims flowed from the discharge. 235 Cal.Rptr. at 295, 733 P.2d at 617. Also, the CBA explicitly gave the employer in *DeTomaso*

---

**2.** Including *Magnuson, supra; DeTomaso, supra; Andrews v. Louisville RR,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Consolidated Rail Corp. v. Railway Labor Execs' Ass'n,* 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989); *Grote v. Trans World Airlines, Inc.,* 905 F.2d 1307 (9th Cir.1990); *Edelman v. Western Air-*

lines, 892 F.2d 839 (9th Cir.1989); *Beers v. Southern Pacific Trans.,* 703 F.2d 425 (9th Cir. 1983); *Newberry v. Pacific Racing Assoc.,* 854 F.2d 1142 (9th Cir.1988); *Adkins v. Seaboard System RR,* 821 F.2d 340 (6th Cir.1987); and several other of other cases.

a right to investigate and established procedures for investigation which appear to have been followed. Therefore, any state law claim would have been "inextricably intertwined" with the CBA since the Court would have had to determine if those procedures were in fact followed.

Alaska also cites *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Md.1981), which has very similar facts to the case at bar. In *Majors*, an employee was suspected of theft, was interrogated at length, but was not discharged. The District Court of Maryland found the actions to be preempted. However, the Court based its opinion on the erroneous legal principle that "[s]o long as his claim is founded on some incident of the employment relation, it is immaterial, for purposes of coverage by the Railway Labor Act, whether the claim is expressly covered by the collective bargaining agreement, or is independent of that agreement." Id. at 857. This premise runs counter to accepted Ninth Circuit law which requires the state law claim to be "arguably governed" by the CBA before it is preempted. It is clear that in the Ninth Circuit, not all employer-employee actions are preempted.[3] The holding of the Maryland District Court is contrary to Ninth Circuit precedent and is clearly not binding here.

In contrast to the governing cases cited above, Ms. McCann was not terminated. Also, unlike in *DeTomaso*, Alaska's CBA nowhere gives the employer a right to investigate or interrogate its employees. Unlike in *DeTomaso*, Alaska cannot claim to have followed CBA procedures in conducting the investigation, since the CBA nowhere establishes procedures to follow in such circumstances. Therefore, unlike in the cases cited by the defendant, the state court will be able to resolve the tort issues raised without reference to the CBA. It is clear that these cases do not compel the result which the defendant seeks.

### 2. Outrageous Conduct

In *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the Supreme Court held that an exception to federal preemption exists for "outrageous conduct," especially when the "conduct was a merely peripheral concern of federal law," and when the conduct affects "interests which were deeply rooted in local feelings and responsibility." *Magnuson* at 1369. This exception was recognized by the Ninth Circuit to apply to RLA preemption cases in *Magnuson*, 576 F.2d at 1369; *see also, Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 566, n. 13, 107 S.Ct. 1410, 1416 n. 13, 94 L.Ed.2d 563 (1987), and was applied in *Balzeit v. Southern Pacific Trans.*, 569 F.Supp. 986 (N.D.Cal.1983). The outrageous conduct exception applies even to a claim which would otherwise be preempted, and so provides an independent grounds to find this action not preempted. *Farmer*, 97 S.Ct. 1056, 1062.

In *Farmer*, an employee was subjected to an ongoing campaign of public harassment and verbal abuse. The Supreme Court held that the state law action for emotional distress was not preempted because it did not "interfere with the effective administration of national labor policy," and "there was an overriding state interest in protecting residents from malicious libels, and that this state interest was deeply rooted in local feeling and responsibility." The Court noted that no provision in the CBA or NLRA protected the "outrageous conduct" at issue.

In *Balzeit v. Southern Pacific Trans.*, 569 F.Supp. 986 (N.D.Cal.1983), Judge Williams of this Court followed *Farmer* to find state claims for emotional distress and violation of "fundamental public policy" to be not preempted by the RLA. In *Balzeit*, the employer insisted that the employee fire his attorneys, who were representing him in a FELA action. Judge Williams held that such interference with the exercise of a right to bring a FELA action

---

**3.** Alaska also cites *Bradley v. TWA*, No. 85 C 3941 (E.D.N.Y.1986) where an employee was strip searched. This case is both unreported and out of circuit, and in either case is not binding on this court.

violated "fundamental public policy." Id. at 989. He noted that neither the RLA nor the CBA protected the "outrageous conduct" at issue, that the conduct touched upon "interests deeply rooted in local feeling" and that the suit would only peripherally concern the CBA. Id.

The conduct at issue in McCann's case seems at least as outrageous as that in *Farmer* and *Balzeit* and fits squarely within the "outrageous conduct" exception. The state certainly has a strong interest in protecting its citizens from false imprisonment, verbal abuse, emotional distress, slander and assault. These are interests which are "deeply rooted in local feeling." Citizens should not be denied these rights without compelling reason, such as their interference with federal policy. However, in our case, as in *Farmer* and *Balzeit*, there is nothing in either the CBA at issue, or in the RLA which purports to protect such outrageous conduct. Allowing the suit will in no way interfere with the statutory scheme established by the RLA. In fact, it appears that the dispute would not even be arbitrable under the CBA since no CBA terms govern the matters at issue, and that therefore, the action does not even "peripherally" concern the CBA or the RLA.

Therefore, the "outrageous conduct" exception to RLA preemption provides an independent ground for finding the plaintiff's state law claims to be not preempted by the RLA. Since the claims are not preempted, they were improperly removed and should be remanded to the state court in which they were filed.

*Attorney Fees*

The plaintiff has moved for an award of attorney fees. 28 U.S.C. § 1447(c) gives the district court discretion to award attorney fees when an action is improperly removed from state court. The case law limits such awards to situations in which the basis for removal was not "colorable." *Schmitt v. Ins. Co. of No. America*, 845 F.2d 1546 (9th Cir.1988). Here, although we order the case remanded, it appears to the satisfaction of the court that the removal was "colorable" given certain conflicting precedent from various jurisdictions. Therefore, we DENY the motion for attorney fees.

For the foregoing reasons, and after careful consideration of motions, legal memoranda, declarations and arguments of the parties, and consistent with the above, IT IS HEREBY ORDERED that:

1. The Court finds that the plaintiff's state law claims are not preempted by the Railway Labor Act or by the collective bargaining agreement which governs the plaintiff's employment;

2. The Court finds that the removal of this action from the Alameda County Superior Court to this Court was improvident and without jurisdiction;

3. The plaintiff's motion to remand this action to state court is GRANTED and this action is hereby remanded forthwith to the state court from which it was removed;

4. The plaintiff's motion for attorney fees is DENIED;

5. The defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED;

6. The clerk of this Court shall forthwith mail a certified copy of this order of remand to the Clerk of the Alameda County Superior Court.

IT IS SO ORDERED.