**Joseph T. LORENZ, Jr.,**
**Plaintiff–Appellant,**

**v.**

**CSX TRANSPORTATION,**
**INCORPORATED, Defendant–Appellee.**

No. 91–1876.

United States Court of Appeals,
Fourth Circuit.

Argued June 1, 1992.

Decided Nov. 24, 1992.

As Amended Jan. 5, 1993.

David Joseph Norman, Mason, Ketterman & Morgan, P.A., Baltimore, Md., argued (David F. Albright, Jr., Horn & Bennett, P.A., Baltimore, Md., on brief), for plaintiff-appellant.

Stephen Bennett Caplis, Whiteford, Taylor & Preston, Baltimore, Md., argued (H. Russell Smouse, Nancy S. Allen, Whiteford, Taylor & Preston, Baltimore, Md., James D. Tomola, Sr. Counsel, CSX Transp., Inc., Jacksonville, Fla., on brief), for defendant-appellee.

Before HAMILTON, Circuit Judge, SPROUSE, Senior Circuit Judge, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

HAMILTON, Circuit Judge:

This case arises out of disciplinary action taken against Joseph Lorenz by his employer, CSX Transportation, Inc. (CSX). Lorenz contested CSX's action through the mandatory grievance procedures of the Railway Labor Act (RLA), 45 U.S.C. §§ 151–88. As a result of CSX's accusations against him, and while his grievance was pending before a public law board, Lorenz filed a defamation action in the Circuit Court for Baltimore City. CSX removed the action to federal district court based on diversity and federal question jurisdiction and then moved for dismissal under Fed.R.Civ.Proc. 12(b)(1) on the ground that Lorenz's claim was preempted by the RLA. The district court granted the motion. Because we find that Lorenz's state law claim for defamation is preempted by the RLA, we affirm the decision of the district court.

## I

Lorenz was a locomotive crane operator for CSX. On July 9, 1990, Lorenz's supervisor gave him instructions to pick up a boxcar load of tieplates and deliver them to a CSX project site at Camden Yards in Baltimore, Maryland. Lorenz claims that because access to the tieplates was blocked by other boxcars, and because he had to wait while other crews cleared them, he resumed his previous job assignment of clearing materials from boxcars in the Curtis Bay rail yard and adjoining spur lines. Lorenz went to the adjoining Seawall branch spur line where he unloaded switch ties and switch points from boxcars sitting there and placed them on property belonging to the Delta Chemical Co. On July 10, 1990, employees of the Delta Chemical Co. informed CSX that materials were removed from a CSX railway car on the Seawall branch spur and placed on its property. A CSX investigator went to the scene and found the materials in an area covered with tall weeds and grass. CSX alleged that Lorenz and a coworker were neither authorized nor was it part of their job assignment to remove materials from these boxcars, and that they had removed the materials with the intent of allowing another party to steal them.

CSX is bound by a collective bargaining agreement, The Baltimore and Ohio Railroad Co. and Brotherhood of Maintenance of Way Employee's Rules and Working Conditions Agreement (BMWE). Under Rule 48(a) of the BMWE, an employee must be notified in writing of the specific charges against him and must have a hearing before disciplinary action can be taken. Such a hearing is required to be held within twenty days of the infraction giving rise to the disciplinary action, and notice of the hearing must be given not later than five days before the hearing. (BMWE Agreement, Joint Appendix (J.A.) 68–75). Pending this hearing, CSX suspended Lorenz from service, as permitted by Rule 48 of the BMWE, on charges of insubordination and unauthorized removal and/or theft of company property. CSX sent Lorenz the required notice, dated July 13, 1990, informing him of the charges and that a company investigatory hearing would be held on Friday, July 20, 1990. To accommodate a request from Lorenz's union representative for more time to arrange for witnesses, the hearing was postponed until Monday, July 23, 1990. CSX, therefore, issued a new notice to Lorenz and all company and union witnesses, indicating the rescheduled hearing date. Lorenz stated that some unidentified member of CSX's management staff posted a copy of this new notice on the office bulletin board. According to Lorenz, someone from CSX stated that the intention in posting the notice was to aid in the process of notifying witnesses of the rescheduled hearing date with little time to do so. The letter stated, in part:

You are charged with insubordination and unauthorized removal and/or theft

of company property when you failed to follow instructions.... ·

(J.A. 31). At the July 23 hearing, based on the witnesses' testimony, Lorenz was found guilty as charged and his services were terminated on August 10, 1990. Lorenz's subsequent appeal of this decision to CSX's Director of Labor Relations was denied. After exhausting these internal grievance procedures, Lorenz appealed to a public law board designated by Lorenz's union and CSX to arbitrate such disputes in accordance with the provisions of the RLA, 45 U.S.C. § 153 (First)(i). The public law board ultimately determined that Lorenz was appropriately subject to discipline, but it reduced that discipline to a forty-five day suspension without pay. While this dispute awaited arbitration, Lorenz filed a state common law defamation action in the state court on May 6, 1991 based on the posting of the July 23 letter and the accusations therein.

CSX removed the case, based on federal question and diversity, to the United States District Court for the District of Maryland. Lorenz did not oppose removal. Thereafter, CSX filed a motion to dismiss the case for lack of subject matter jurisdiction on the ground that the RLA's mandatory arbitration procedures provided the sole and exclusive remedy for resolving "minor disputes" such as this one, and that the federal preemption doctrine precludes the jurisdiction of any court, whether federal or state. Fed.R.Civ.P. 12(b)(1). This appeal followed.

The district court held a hearing on the matter and ruled that the dispute was preempted by the compulsory arbitration requirement of the RLA and that it was, therefore, without jurisdiction to hear Lorenz's claim.

## II

■ The RLA was created, in part, "to provide for the prompt and orderly settlement of all disputes growing out of grievances, or out of interpretation or application of agreements covering rates of pay, rules, or working conditions." · 45 U.S.C. § 151a(5). Consequently, the RLA has a preemptive effect on some tort claims that significantly restricts an employee's right to resort to state law. *Peterson v. Air Line Pilots Ass'n Int'l.*, 759 F.2d 1161 (4th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). The preemptive effect of the RLA is usually cast in terms of whether or not the dispute is a "minor" or "major" dispute. Both minor and major disputes are subject to the mandatory grievance resolution mechanisms of the RLA. A minor dispute arises out of the interpretation or application of the collective bargaining agreement. Major disputes are those involving efforts to negotiate or alter the collective bargaining agreement. *See, e.g., Conrail Corp. v. Ry. Labor Executives Ass'n.*, 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989); *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed.1886 *adhered to*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). The parties agree that this case does not involve a major dispute. Generally disputes arising from a discharge, such as this one, are minor disputes and are preempted. Sarno, *Railway Labor Act Pre-emption*, 104 A.L.R.Fed. 548 § 3 (1991). Such minor disputes must be handled through the contractual grievance procedures, with unresolved differences submitted to the contractually created public law boards. 45 U.S.C. § 153 (First)(i); *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972); *see also In Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), *reh'g denied*, 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1979) (noting that "Congress considered it essential to keep the so-called minor disputes within the Adjustment Board and out of the courts."). The question to be decided, therefore, is whether Lorenz's defamation claim constitutes a minor dispute.

The starting point for considering the scope of the preemptive effect of the RLA is the Supreme Court's decision in *Andrews*. In *Andrews*, the Court reconsidered its earlier holding in the case of *Moore v. Illinois Central R.R. Co.*, 312 U.S. 630,

61 S.Ct. 754, 85 L.Ed. 1089 (1941), in which it ruled that the RLA's dispute resolution mechanism was voluntary. The Court concluded that it had erroneously decided *Moore,* noting that the view that "the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or carrier chooses, was never good history and is no longer good law." *Andrews* 406 U.S. at 322, 92 S.Ct. at 1564. The Court, in *Andrews,* found that the employee's right not to be discharged arose from the terms of the collective bargaining agreement. *Id.* at 323–24, 92 S.Ct. at 1564–65. The claim in *Andrews* was for breach of contract and concerned the parties' differing interpretations of the obligation under the collective bargaining agreement for the reinstatement of the employee following an automobile accident. *Id.* at 324, 92 S.Ct. at 1565. Since the dispute arose out of differences regarding the application or interpretation of the collective bargaining agreement, the employee's exclusive remedy was the RLA's grievance procedure, which barred his state law cause of action. *Id.* at 324–26, 92 S.Ct. at 1565–66.

■ Based on *Andrews,* if an employee's defamation claim is in reality a dispute involving the application or interpretation of a collective bargaining agreement—a minor dispute—the RLA removes the dispute from state and federal court's jurisdiction. As the alleged defamation becomes distanced from the work-place and is only "peripherally" concerned with federal labor law, it is excepted from preemption. *Peterson,* 759 F.2d at 1168. A defamation action based upon statements made in the context of the RLA thus raises the issue of federal preemption.

The ninth circuit examined the relationship between state law tort claims and collective bargaining agreements in *Magnuson v. Burlington N., Inc.* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). In *Magnuson,* a train dispatcher brought an action for intentional infliction of emotional distress based upon his discharge for causing a serious train collision. To avoid preemption, the employee argued that his action was not one for wrongful discharge, but one in tort, and thus was not a minor dispute. The court rejected that argument because the employee's action was "inextricably intertwined" with the grievance process and the RLA. *Magnuson,* 576 F.2d at 1369. Other jurisdictions follow the *Magnuson* holding in finding state law tort claims preempted. *See, e.g., Morales v. Southern Pac. Transp. Co.,* 894 F.2d 743 (5th Cir.1990); *General Comm. of Adjustment, United Transp. Union v. CSX R.R. Corp.,* 893 F.2d 584 (3d Cir.1990); *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045 (7th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984); *Gray v. Chessie Sys.,* 588 F.Supp. 1334 (D.Md. 1984); *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853 (D.Md.1981).

The district court relied heavily on the *Majors* decision in support of its holding. In *Majors,* the Maryland district court dismissed, as preempted, an employee's defamation and false imprisonment claims. His employer allegedly caught him stealing and during an interrogation in the manager's office refused to let the employee leave. The employee then brought a defamation and false imprisonment action against U.S. Air. The district court correctly noted that hearing the employee's claims "would thwart the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry without resort to the courts." *Majors,* 525 F.Supp. at 856.

The cases considering the preemptive effect of the RLA show an increasing acceptance of the RLA's grievance mechanisms to resolve work-place disputes which sound in tort. In *DeTomaso v. Pan American World Airways, Inc.,* 43 Cal.3d 517, 733 P.2d 614, 235 Cal.Rptr. 292, *cert. denied,* 484 U.S. 829, 108 S.Ct. 100, 98 L.Ed.2d 60 (1987), the airline sold three bins of salvage to an employee, but later learned that the bins contained some material which was not abandoned. An airline security official accompanied an FBI agent to the employee's home, made statements concerning the impropriety of the employee's possession of

the material, and confiscated the cargo. The airline subsequently discharged the employee for fraud, dishonesty and abuse of company policy. He filed a grievance and the airline ultimately reinstated him with back pay. Prior to his reinstatement, the employee brought an action for defamation and infliction of emotional distress. The California Court of Appeals found that the RLA did not preempt these claims, holding that they were "legally independent of any contractual claims or grievances he may have that may be arbitrable." *DeTomaso v. Pan Am. World Airways, Inc.*, 172 Cal.App.3d 1170, 218 Cal.Rptr. 746, 750 (1985). The California Supreme Court reversed. *DeTomaso v. Pan Am. World Airways, Inc.*, 43 Cal.3d 517, 733 P.2d 614, 235 Cal.Rptr. 292, *cert. denied*, 484 U.S. 829, 108 S.Ct. 100, 98 L.Ed.2d 60 (1987). It found that the statements upon which the employee based his claims were made during investigations and hearings required by the collective bargaining agreement. The court ruled that the RLA's preemptive effect extended beyond actions for breach of contract, particularly to claims premised upon statements during proceedings or investigations mandated by the collective bargaining agreement. Finding that the statements fell "squarely within the ambit of *Magnuson*," the court held that the RLA preempted the defamation and emotional distress claims.

■ The case at hand is similar. Lorenz's claim is grounded in state law and, in effect, challenges CSX's conduct in the application of the investigatory procedures required by the BMWE. The defamation claim arises from the issuance of a notice incident to the grievance process under the BMWE. The BMWE required the notice to be given before an employee could be disciplined. The allegedly defamatory statement is, facially, a simple recitation of the charges against Lorenz and notice of a hearing which CSX was required to hold. This act was inextricably intertwined with the grievance procedures mandated by the BMWE and this dispute cannot be settled without reference to the BMWE and the grievance procedures mandated by it.

The dissent cites, and relies heavily on, *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), for the proposition that a state-law suit is preempted only if the action requires interpretation of the collective bargaining agreement. The *Lingle* decision, however, was based upon preemption under the National Labor Relations Act (NLRA). At least since *Elgin, Joliet & Eastern R. Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), the Court has clearly recognized that preemption under the RLA is more pervasive. The Court stated that a minor dispute under the RLA:

> relates either to the manner or proper application of a particular provision [of the agreement] or to an omitted case. *In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective bargaining agreement, e.g., claims on account of personal injuries.*

*Id.* at 723, 65 S.Ct. at 1290 (emphasis added). The language of the RLA itself states that covered disputes include: "disputes between an employee or group of employees and a carrier or carriers ... growing out of grievances *or* out of the interpretation of agreements...." 45 U.S.C. §§ 153 First (i), 184 (emphasis added). The NLRA, in contrast, limits itself to the "violation of labor contracts." 29 U.S.C. § 185(a). The circuit courts that have considered *Lingle* in light of the RLA declined to extend its analysis beyond the NLRA context. *Hubbard v. United Airlines, Inc.*, 927 F.2d 1094, 1097 (9th Cir.1991); *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1335 n. 4 (6th Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).

Lorenz also argues that the posting of the notice was part of a scheme to coerce him to falsely implicate another party in the theft of company materials. His only support for this allegation is his assertion that he was told that charges against him would be dropped if he would testify that a third party, suspected by CSX of arranging for the theft of its materials, had induced Lorenz to unload the material so that party could steal the materials. This allegation,

even if it could·be supported, does not change the nature of the claim from·that of a defamation action arising out of the mandatory grievance procedures. Lorenz expressly affirmed and the complaint shows, that his claim is solely one for defamation. (Transcript, J.A. 91, 97, 98, 157; Complaint, J.A. 23–27).

■ Lorenz asserts that his claim is excepted from preemption, under *Farmer v. United Bhd. of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977),·because CSX's conduct was outrageous. *Farmer*, a National Labor Relations Act (NLRA) case, involved allegations that union officials subjected the plaintiff to public ridicule, incessant verbal abuse, threats and intimidation. *Id.* at 293, 97 S.Ct. at 1059. It is not clear that the concerns expressed in *Farmer*, a NLRA case, apply in a RLA case. As the previous discussion illustrates, RLA and NLRA preemption are entirely different. Preemption is much more pervasive in an RLA case, whereas the NLRA provides for concurrent state jurisdiction in which it is appropriate to consider states' interests. Furthermore, our decision in *Peterson* makes it clear that the "sensitive balancing" of federal·and states' interests required in NLRA cases is not the standard in RLA cases. In *Peterson*, we declined to apply analysis appropriate in an NLRA case, and outlined in *Farmer*, to a wrongful discharge claim that was preempted by the RLA. The preemption doctrines under the NLRA and the RLA differ; although "[p]reemption under the RLA has followed a similar tack [to the NLRA], a more stringent pattern of judicial deference has emerged." *Peterson*, 759 F.2d at 1168. "Unlike preemption under the NLRA, the preemption of state law claims under the RLA has been more complete." *Id.* at 1169 (citations omitted):·

■ Even if the outrageous conduct exception was applicable in an RLA case, the conduct of CSX in this case does not rise to the level of that present in *Farmer*. The conduct in *Farmer* was so extreme that "no reasonable man in a civilized society should be expected to endure it." 430 U.S. at 294, 97 S.Ct. at 1060. In contrast, in its

investigation of the unauthorized removal of company materials from a boxcar, CSX charged Lorenz "with insubordination and unauthorized removal and/or theft of company property when [he] failed to follow instructions." (J.A. 31). This hardly amounts to conduct sufficient to warrant application of the *Farmer*. exception, even if it is applicable in RLA cases.

This is a defamation action arising out of an investigation, and it inextricably involves the grievance procedures under the RLA. The matter is not attenuated from the work-place and, therefore, is a minor dispute preempted under the RLA which is not excepted from preemption by *Farmer*. Accordingly, we affirm the dismissal of this action by the district court.

AFFIRMED.

SPROUSE,.Senior Circuit Judge, dissenting:

I respectfully dissent.

I, of course, agree with the majority that the RLA was created in part "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5). I also agree that the preemptive effect of the RLA is usually cast in terms of whether the claim is a major or minor dispute, that both are subject to separate mandatory grievance procedures of the Act, and that this case does not involve a major dispute. I disagree, however, with the majority's conclusion that this is a minor dispute and, therefore, preempted. The majority bases its holding that Lorenz's defamation action against CSX is a minor dispute on the rationale that it is a dispute arising from his discharge, because it is "inextricably intertwined" with the collective bargaining agreement governing the relations between CSX and its employees. I disagree with this conclusion.

First, examining Lorenz's action without use of the "inextricably intertwined" language, it is clear that the claim does not arise from his discharge. The majority le-

ans strongly on *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), which is correctly cited for the proposition that the RLA preempts a state tort claim for wrongful discharge. *Andrews*, however, is inapposite to this dispute.

The principal issue in *Andrews* related to a straightforward discharge and the controversy was unquestionably a minor dispute. In that case a railroad employee was injured in an accident and was discharged when he attempted to return to work. There resulted a prototypical discharge case: the employee sued for breach of the employment contract, which was clearly a minor dispute required to be resolved under RLA-mandated procedures. As the Supreme Court said in its opinion:

> Here it is conceded by all that the only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a "wrongful" one that entitles him to damages, is the collective-bargaining agreement between the employer and the union.... Thus petitioner's claim, and respondent's disallowance of it, stem from differing interpretations of the collective-bargaining agreement.

*Id.* at 324, 92 S.Ct. at 1565. Our court echoed *Andrews* in *Peterson v. Air Line Pilots Association, International*, 759 F.2d 1161 (4th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985), where we stated that an employee's wrongful discharge claim is necessarily a minor dispute. *Id.* at 1169. Here, in contrast to *Andrews*, Lorenz is not suing for breach of the employment contract or wrongful discharge. His suit is for defamation, a tort entirely independent of the collective bargaining agreement. In *Peterson* we said, as the majority notes, that "where the conduct sought to be regulated by state law is only a 'peripheral concern' of federal labor law," it is not preempted. *Id.* at 1168. We also pointed out in *Peterson* that malicious libel is a common-law tort which "can truly be said to be but of peripheral concern to labor law." *Id.* at 1171 n. 20. Thus, it is clear that Lorenz's defamation action does not "arise from his discharge" in the sense intended by *Andrews*.

The majority finds that the claim arises from Lorenz's discharge nonetheless, because it is "inextricably intertwined" with an interpretation of the collective bargaining agreement. The majority adopts this language from *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978), in which the Ninth Circuit held that the RLA preempted an employee's action for intentional infliction of emotional distress. The court stated that the claim was a minor dispute because it was "based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A." *Id.* at 1369. The Supreme Court has neither adopted nor rejected the "inextricably intertwined" analysis for RLA-preemption cases. Notably, however, its approach to that analysis in NLRA-preemption cases would require rejection of the *Magnuson* reasoning. In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Court held that a state-law suit for retaliatory discharge was preempted under section 301 of the Labor Management Relations Act "only if such application [of state law] requires the interpretation of a collective-bargaining agreement." *Id.* at 413, 108 S.Ct. at 1885. It recited the Seventh Circuit's reasoning that " 'the state tort of retaliatory discharge is inextricably intertwined with the collective-bargaining agreements here, because it implicates the same analysis of the facts as would an inquiry under the just cause provisions of the agreements.' " *Id.* at 408, 108 S.Ct. at 1883 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031, 1046 (7th Cir.1987)). However, while agreeing that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the employee] was fired for just cause," *id.*, the Supreme Court held that this was not enough to preempt the employee's claim:

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other,

would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 409–10, 108 S.Ct. at 1883. Thus, in the NLRA-preemption context, the Supreme Court has stated that "inextricably intertwined" can be a misleading phrase; the real test is whether the state-law claim requires an interpretation of the collective bargaining agreement. *Accord United Steelworkers of Am. v. Rawson,* 495 U.S. 362, 370, 110 S.Ct. 1904, 1910, 109 L.Ed.2d 362 (1990); *McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531, 535 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992).

Even assuming it is appropriate to apply the "inextricably intertwined" analysis in RLA-preemption cases, Lorenz's defamation action simply is not inextricably intertwined with the CSX collective bargaining agreement. I must agree that, adhering to the rationale developed in *DeTomaso, Majors,* and similar cases, one might arguably reach the result announced by our majority opinion. *DeTomaso* and *Majors* in effect hold that a claim for tortious conduct occurring during proceedings or investigations governed by a collective bargaining agreement is inextricably intertwined with the agreement, or that a tort action is inextricably intertwined with a collective bargaining agreement if the employer pleads the agreement as a defense. *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853, 857 (D.Md.1981); *DeTomaso v. Pan Am. World Airways, Inc.,* 43 Cal.3d 517, 235 Cal.Rptr. 292, 300, 733 P.2d 614, 622, *cert. denied,* 484 U.S. 829, 108 S.Ct. 100, 98 L.Ed.2d 60 (1987); *accord Magnuson,* 576 F.2d at 1369–70; *Carson v. Southern Ry.,* 494 F.Supp. 1104, 1112 (D.S.C.1979); *Louisville & N. R.R. v. Marshall,* 586 S.W.2d 274, 281 (Ky.App.1979). Holding to the contrary in the RLA-preemption context, see *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045, 1059 (7th Cir.1983) (Posner, J., dissenting), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984); *McCann v. Alaska Airlines, Inc.,*

758 F.Supp. 559, 564 (N.D.Cal.1991); *Merola v. National R.R. Passenger Corp.,* 683 F.Supp. 935, 938 (S.D.N.Y.1988); *Raybourn v. Burlington N. R.R.,* 602 F.Supp. 385, 388 (W.D.Mo.1985); *Balzeit v. Southern Pac. Transp. Co.,* 569 F.Supp. 986, 990 (N.D.Cal.1983). Holding to the contrary in the NLRA-preemption context, see for example *Caterpillar Inc. v. Williams,* 482 U.S. 386, 398, 107 S.Ct. 2425, 2432–33, 96 L.Ed.2d 318 (1987) (rejecting employer's argument that "§ 301 pre-empts a state-law claim even when the employer raises only a defense that requires a court to interpret or apply a collective-bargaining agreement").

Cases in the *DeTomaso–Majors* line are misleading because they distort the congressional purpose of the RLA. Both the majority and the district court relied on language in *Majors* that entertaining Lorenz's action in the district court "would thwart the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry without resort to the courts." *Majors,* 525 F.Supp. at 856. In my view, the majority's reliance on *Elgin, J. & E. R.R. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), is misplaced. It would seem to imply that Congress intended the RLA to preempt any railroad-industry dispute "founded upon some incident of the employment relation." *Id.* at 723, 65 S.Ct. at 1290. The holding of *Elgin* primarily distinguishes minor disputes from major disputes, and the quoted language simply is out of context with the issue presented here. Several courts have noted that such an expansive view of RLA preemption is a misstatement of congressional intent. *See, e.g., McCann,* 758 F.Supp. at 566 ("some incident of the employment relation" test is an "erroneous legal principle"); *Raybourn,* 602 F.Supp. at 388 (same).

The congressional purpose underlying the RLA is not to require arbitration for all employee-employer disputes, but only (those that are classified as major and) those "growing out of grievances or out of the interpretation or application of agree-

ments covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5). As Judge Posner stated in his dissent in *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045 (7th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984), "[i]t might be different if Congress had established an administrative agency to police tort or tort-like conduct in railroad employment, but it has not; it has contented itself with requiring arbitration of contract disputes." *Id.* at 1060 (Posner, J., dissenting). As Judge Posner would have held in *Jackson,* the dispute here

> is not a grievance because it would exist even if there were no collective bargaining agreement, unlike the situation in *Andrews....*
>
> ....
>
> ... The present dispute does not arise from the collective bargaining agreement. It has an independent basis in tort law and is therefore outside the arbitrators' exclusive jurisdiction.

*Id.* at 1059-60 (Posner, J., dissenting).

Clearly Congress did not intend for the RLA to "wipe out the employee's common law rights other than his right to enforce the very contracts that are subject to the scheme of compulsory arbitration." *Id.* at 1060 (Posner, J., dissenting).

In my view, the facts of this case simply do not constitute a minor dispute. Assuming the allegations in the complaint are true, as we must, the posting of the defamatory notice was not authorized by the collective bargaining agreement. CSX contends that the agreement permitted it to post the notice as a way to notify witnesses of Lorenz's upcoming disciplinary hearing. In fact, the only mention of notice in the agreement is that *"the employee* shall be notified in writing of the precise charge against him and *he* shall have reasonable opportunity to secure the presence of necessary witnesses." The agreement contains no provision allowing CSX to publish the notice to other employees, much less the world at large. Because Lorenz's defamation claim would exist with or without the collective bargaining agreement, it is not "inextricably intertwined" with an in-

terpretation of the agreement. Nor does the claim arise out of Lorenz's discharge in the sense intended by *Andrews,* since it is not an action for wrongful discharge artfully pled to look like a tort suit.

In view of the above, I would reverse the action of the district court dismissing Lorenz's claim.